**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Calvin Matthews, Tyrone Hunt, and Michael Buckner,<br><br>   Plaintiffs,<br><br>vs.<br><br>NPMG Acquisition Sub, LLC,<br><br>   Defendant. | No. CV 09-2326-PHX-MHM<br><br>**ORDER** |

Currently pending before the Court is Defendant NPMG Acquisition Sub, LLC's Motion to Dismiss. (Doc. 12). Also before the Court are Plaintiffs Calvin Matthews, Tyrone Hunt, and Michael Buckner's Motion to Extend Time to Respond to Motion to Dismiss, (Doc. 16), and Motion to Convert Defendant's Rule 12(b)(6) Motion to Dismiss into a Motion for Summary Judgment. (Doc. 18). Having reviewed the Parties pleadings, the Court issues the following Order:

I.   BACKGROUND

This is an action for employment discrimination brought pursuant to 42 U.S.C. § 1981. Plaintiffs' Complaint, filed November 4, 2009, alleges that their employer, Defendant NPMG Acquisition Sub, LLC, discriminated against them based on their race. (Doc. 1). Defendant filed the instant Motion to Dismiss on January 6, 2010. (Doc. 12). On January 27, 2010, five days after a responsive pleading was due, Plaintiffs filed their Motion to

1 Extend Time to Respond to Motion to Dismiss, explaining their tardiness and basing their
2 request for additional time on the fact that counsel's daughter underwent major surgery on
3 January 22, 2010, in Chicago. (Doc. 16). Over two weeks later, on February 16, 2010,
4 before the Court ruled on their extension of time motion, Plaintiff's filed their Motion to
5 Convert Defendant's Rule 12(b)(6) Motion to Dismiss into a Motion for Summary Judgment.
6 (Doc. 18). In that motion, Plaintiffs stated that this Court consider it to be their Response
7 to Plaintiff's Motion to Dismiss in the event that this Court declines to convert Defendant's
8 Motion to Dismiss into a motion for summary judgment. (Id., p.6). Plaintiff's Motion to
9 Dismiss became fully briefed on February 25, 2010. (Doc. 20).

10 II.   DISCUSSION

11    Defendant's Motion to Dismiss is based on three independent grounds: (1) Plaintiffs
12 waived and released these claims pursuant to the court-approved Consent Decree; (2)
13 Plaintiffs attempt to assert claims that could have been resolved in the previous lawsuit and,
14 as a result, are barred by Res Judicata; and (3) Plaintiff's Complaint fails on its face to state
15 a claim under the "plausibility" pleading standard set by the Supreme Court in Bell Atlantic
16 Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, __U.S. __, 129 S. Ct. 1937
17 (2009). The Court turns first to Defendant's waiver and Res Judicata arguments, as they
18 implicate Plaintiffs' Motion to Convert Defendant's Rule 12(b)(6) Motion to Dismiss into
19 a Motion for Summary Judgment.

20    A.   Wavier and Res Judicata

21    Defendant's waiver and Res Judicata arguments are predicated on a Consent Decree
22 entered by Judge Bolton in the case Equal Employment Opportunity Commission v.
23 iPayment, Inc. and NPMG Acquisition Sub, LLC ("EEOC v. iPayment") (CV-08-01790,
24 Doc. 69). Before discussing the content of this decree and it applicability to this case, the
25 Court must address Plaintiff's argument that reliance on the Consent Decree and the
26 underlying Complaint necessitates transforming Defendant's Motion to Dismiss into a
27 motion for summary judgment. As a general rule, district courts may not consider materials
28 not attached to a plaintiff's complaint. United States v. 14.02 Acres, 547 F.3d 943, 955 (9th

Cir. 2008). Plaintiff's position is incorrect, however, as the Ninth Circuit has held that courts "may take judicial notice of matters of public record and consider them without converting a Rule 12 motion into one for summary judgment." Id. (internal quotation marks omitted) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)). The Court, therefore, may properly consider the Complaint filed in EEOC v. iPayment and the Consent Decree which resolved that matter without transforming Defendant's dismissal motion into one for summary judgment.

EEOC v. iPayment was an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by the Equal Employment Opportunity Commission ("EEOC") to "correct unlawful employment practices on the basis of race and to provide appropriate relief to Calvin Matthews, Tyrone Hunt, Michael Buckner, and a class of employees, who were adversely affected by such practices." (CV-08-01790, Doc. 10, p.1). On September 15, 2009, Judge Bolton entered the Consent Decree, which ordered payment of $100,000.00 to Calvin Matthews, $90,000.00 to Tyrone Hunt, and $90,000.00 to Michael Buckner as compensatory damages, in addition to a number of other forms of non-monetary relief, such as personalized apology letters (CV-08-01790, Doc. 67). Additionally, the Consent Decree stated:

> This Consent Decree *resolves all claims of the Commission and of Mssrs. Matthews, Hunt, Buckner, Gawarecki* (each a "Charging Party," and collectively the "Charging Parties") and a class of former employees identified in Exhibit B hereto (each a "Class Member," and collectively the "Class Members") against Defendant (including, but not limited to, Defendant's officers, members, directors, and employees), including any and all claims for back pay, compensatory and punitive damages, interest, injunctive relief, and attorney's fees and costs *arising out of the issues that were or could have been raised in this lawsuit up until the date of the execution of this Consent Decree by the parties.*

(emphasis added) (Id., p.2, ¶1).

In construing the provisions of a consent decree, courts utilize contract principles. Wicker v. Oregon, 543 F.3d 1168, 1174 (9th Cir. 2008) ("Because a consent decree has attributes of both a contract and a judicial act, courts use contract principles in construing it."). Under basic contract principles of the State of Arizona, this Court must first look to the

plain meaning of the Consent Decree's language, without reference to extrinsic evidence. See Marvin Johnson, P.C. v. Shoen, 876 F. Supp. 1109, 1111 (D. Ariz. 1995) (noting that under Arizona law "extrinsic evidence cannot be used to add to, subtract from, vary, or contradict the terms of a complete and unambiguous written agreement." (internal quotations omitted)). The Court finds that paragraph 1 of the Consent Decree is unmistakably clear; all claims of Plaintiffs Matthews, Hunt, and Buckner, that could have been raised in EEOC v. iPayment have been expressly waived. In their response, Plaintiffs do not appear to dispute the plain meaning of the Consent Decree. They argue instead that EEOC's attorney informed them that the Consent Decree would not preclude them from filing a subsequent action under 42 U.S.C. § 1981.[1] This Court, however, cannot consider such extrinsic evidence, as the language of the consent decree is plain and unmistakable: "*any and all claims* . . . arising out of the issues that were or could have been raised in this lawsuit up until the date of the execution of this Consent Decree by the parties" have been waived. (CV-08-01790, Doc. 10, p.2, (emphasis added)); Marvin Johnson, P.C., 876 F. Supp. at 1111. Accordingly, if the Consent Decree is binding on Plaintiffs, it clearly precludes them from bringing this lawsuit.

The Court says "if" because Plaintiffs' primary defense to Defendant's motion is that they are not bound by the Consent Decree. This assertion, which the Court will address momentarily, also affects Defendant's Res Judicata arguments. "Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." Western Radio Servs. Co. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997). "In order for res judicata to apply there must be: 1) an identity

---

[1] The Court acknowledges that the Consent Decree would not bar Plaintiffs from suing this Defendant for racial harassment stemming from events that occurred subsequent to the execution of the Consent Decree. It does not appear, however, that Plaintiffs' instant lawsuit raises new allegations of discrimination. In fact, Plaintiffs' line of argumentation in opposition to Defendant's Motion to Dismiss seems to acknowledge that the underlying factual predicate is the same between this lawsuit and EEOC v. iPayment. Plaintiffs respond to Defendant's waiver and res judicata arguments by arguing that they were not parties to the Consent Decree (Doc. 18, p.3), not by asserting the factual predicate in this lawsuit is different from that of EEOC v. iPayment

- 4 -

1  of claims, 2) a final judgment on the merits, and 3) identity or privity between parties." Id.
2  "The central criterion in determining whether there is an identity of claims between the first
3  and second adjudications is whether the two suits arise out of the same transactional nucleus
4  of facts." Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001)
5  (internal quotations omitted).  In other words, a plaintiff is barred from bringing "grounds
6  for recovery which could have been asserted, whether they were or not, in a prior suit
7  between the same parties" Id. (internal quotations omitted).

8       Turning to the res-judicata test, the Court notes that consent decrees are considered
9  final judgments on the merits, which are afforded res judicata effect. See Gilmore v. Cal.,
10 220 F.3d 987, 1001 n.17 (9th Cir. 2000) (citing  Securities & Exch. Comm'n v. Randolph,
11 736 F.2d 525, 528 (9th Cir. 1984) ("A consent decree is a judgment, [and] has the force of
12 res judicata")).  There is also an identity of claims between this lawsuit and EEOC v.
13 iPayment, as both actions are predicated on the same nucleus of operative facts; racial
14 harassment by Defendant NPMG.[2]  As for the third prong of the test, privity, the Court notes
15 that Plaintiffs can only have privity with Defendant if Plaintiffs were parties to the Consent
16 Decree, which Plaintiffs deny.   Thus, as with Defendant's waiver claim, the Court cannot
17 make a determination concerning res judicata until it address Plaintiff's contention that they
18 were not parties to EEOC v.  iPayment and are not, therefore, bound by it.

19      In support of their position, Plaintiffs cite the Supreme Court case Martin v. Wilks,
20 which expounds the general rule that a "stranger" to prior litigation ending in judgment or
21 a consent decree is not precluded from later litigating his or her own individual claims.  490
22 U.S. 755, 763 (1989) ("A judgment or decree among parties to a lawsuit resolves issues as
23 among them, but it does not conclude the rights of strangers to those proceedings."). At first
24 blush, Plaintiffs' position is puzzling, as the First Amended Complaint in  EEOC v.
25 iPayment specifically stated that the case was brought to "to correct unlawful employment
26 practices on the basis of race and to provide appropriate relief to Calvin Matthews, Tyrone Hunt,

27
28     [2]Please see footnote 1, *supra*.

- 5 -

[and] Michael Buckner." (CV-08-01790, Doc. 10, p.1). Additionally, each Plaintiff is specifically identified, by name and as a charging party, in the Consent Decree, including in the release paragraph, which states that: "This Consent Decree resolves all claims … of Mssrs. Matthews, Hunt, Buckner, …against Defendant." (Doc. 69, p.2). The Eleventh Circuit, however, has held that a consent decree issued in an EEOC case is not always an absolute bar to a subsequent suit. Riddle v. Cerro Wire & Cable Group, Inc., 902 F.2d 918, 922 (11th Cir. 1990). When during the course of the EEOC's litigation the interests of the aggrieved individual on whose behalf the EEOC initiated litigation and the EEOC diverge, privity between those parties is destroyed and, as a result, the aggrieved individual is not barred by the doctrine of re judicata from bringing suit, even where the EEOC sought and achieved individualized relief for the aggrieved individual. Id.

In arguing that their instant suit is not precluded by the Consent Decree, Plaintiffs rely exclusively on Riddle in combination with Wilks. Defendant, on the other hand, cites this Court to and primarily relies on a Fourth Circuit case holding that a charging-party in a case litigated by the EEOC who does not exercise his right to intervene in the EEOC action is bound by the outcome, without exception. Adams v. Proctor & Gamble Mfg. Co., 697 F.2d 582, 583 (4th Cir. 1983). It does not appear the Ninth Circuit has weighed in on this specific issue.   Because it has not done so, this Court is hesitant to adopt the hardline rule endorsed by the Fourth Circuit in Adams. Additionally, the Court finds more reasonable the approach taken by the Eleventh Circuit, which acknowledges that in some, limited circumstances, an individual on whose behalf the EEOC litigates may not always have his interest properly represented by the EEOC and should not, therefore, be bound by the outcome of that action. Additionally, Riddle relies on and appears to comport with the Supreme Court's finding in General Telephone. Co. of the Northwest, Inc. v. EEOC, that the interests of the EEOC and of an individual may be divergent,[3] 446 U.S. 318, 326 (1980) ("When the EEOC acts, albeit

---

[3]The Adams case pre-dates the Supreme Court's holding in General Telephone, but in subsequent years, post-General Telephone, the Fourth Circuit has declined to overturn

- 6 -

1 at the behest of and for the benefit of specific individuals, it acts also to vindicate the public
2 interest in preventing employment discrimination."); see Riddle, 902 F.2d at 922 (explaining
3 how the interests of the EEOC and an aggrieved individual are not necessarily compatible)[4];
4 see also Vines v. Univ. of La., 398 F.3d 700, 707 (5th Cir. 2005) (relying on General
5 Telephone Co. for the proposition that "the interests of the EEOC and of the individual may
6 be divergent."); Loveridge v. Fred Meyer, 72 Wn. App. 720, 731 (Wash. Ct. App. 1993)
7 (applying Riddle, instead of Adams, in part because Adams was decided before General
8 Telephone and Wilks).

9      In Riddle, the EEOC brought suit under Title VII on behalf of Nora Riddle against her
10 employer, Cerro Wire and Cable Group, Inc. ("Cerro"). The EEOC's Complaint identified
11 Riddle by name, stating, "this is an action under Title VII of the Civil Rights Act of 1964 to
12 correct unlawful employment practices on the basis of sex and to make whole Mrs. Nora E.
13 Riddle," and sought general relief against Cerro, in addition to personal relief for Riddle. Id.
14 at 918 n.1. Shortly before trial was set to occur, EEOC and Cerro negotiated a settlement.
15 The settlement agreement displeased Riddle, causing her to retain an attorney to seek
16 assurance from EEOC that in the event of settlement, it would issue her a right-to-sue letter
17 and that she would be allowed to institute an individual action against Cerro. Id. The EEOC
18 sent Riddle a letter agreeing to issue the right-to-sue letter and informing Riddle that she
19 would not be bound by the settlement unless she signed a release and, as a result, received
20 money damages from Cerro. Riddle did not sign the release and received no money

---

Adams, even in light of Riddle. See Francis v. American Tel. & Tel. Co., 1994 U.S. App. LEXIS 774 (4th Cir, Jan. 19, 1994).

[4]The Riddle Court's discussion of how the interest of an aggrieved individual and the EEOC can diverge is instructive: "The EEOC is primarily interested in securing equal employment opportunity in the workplace. That interest is often most completely advanced through conciliation agreements or consent decrees of the kind involved in this case, where the employer agrees to take broad remedial steps to eradicate discrimination. The aggrieved individual, on the other hand, is primarily interested in securing specific personal relief of the kind Riddle is seeking in her private action against Cerro. The differing interests of the EEOC and of the aggrieved individual are not necessarily compatible." 902 F.2d at 922–23.

- 7 -

1  damages. Id. The Eleventh Circuit held that Riddle and EEOC had divergent interests and
2  were not, therefore, in privity because:

> Riddle made clear to the EEOC and Cerro before the consent decree was finalized that she was dissatisfied with the Commission's handling of her interests. Riddle's interests and those of the EEOC diverged at that point. The EEOC acknowledged that fact when it informed Riddle that she was not bound by the EEOC's resolution of the matter but was free to institute a private action against Cerro. Riddle did not, in fact, accept the terms of the consent decree; she did not sign a release, and she did not receive any money from Cerro.

7  In making its ruling, the Riddle Court specifically noted that it expressed "no opinion
8  whether another case might present facts sufficient to demonstrate an identity of interests and
9  privity between the aggrieved individual and the EEOC. We hold only that here, where there
10 was a clear divergence of interests, Cerro has not shown that Riddle and the EEOC were in
11 privity." Id. at 923 n.5.
12       Based on the foregoing, it is clear to this Court that the holding in Riddle is a narrow
13 one, defying blanket application, and limited only to those situations where an aggrieved
14 individual can marshal facts that demonstrate that his interests clearly diverged with those
15 of the EEOC. In the instant case, the factual record is insufficient to make a determination
16 under Riddle. On the one hand, in their response to Defendant's Motion to Dismiss,
17 Plaintiffs direct the Court to the Affidavit of Defendant Hunt, in which Hunt purportedly
18 states that he was displeased with the result obtained by the EEOC, and that all Plaintiffs
19 were told by the EEOC attorney that they could pursue a private action under 42 U.S.C.
20 §1981 notwithstanding entry of the Consent Decree obtained by the EEOC. Plaintiffs,
21 however, failed to attach the affidavit to their response, so this Court has not had opportunity
22 to examine it. On the other hand, Defendant claims that all of the Plaintiffs accepted the
23 damage payments to which the Consent decree entitled them, thereby binding them to its
24 provisions, including the provision in which Plaintiffs agreed to waive all future claims
25 arising out of the same nucleus of common facts.  Defendant, however, has not provided
26 evidence to support its assertion that Plaintiffs received damage payments pursuant to the
27 Consent Decree. And, even if such evidence were in the record, the Court could probably
28 not consider it in the context of a motion to dismiss and would have to convert Defendant's

1  motion to one for Summary Judgment.  See  14.02 Acres, 547 F.3d at 955; Scott v.
2  Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984) (noting that the affirmative defense of res
3  judicata may only be decided on a motion to dismiss where there are no disputed issues of
4  fact concerning the issue).  Consequently, at this time, the Court cannot grant Defendant's
5  motion to dismiss based on waiver and res judicata.

6        B.     Failure to State a Claim

7  The Court turns next to Defendant's argument that Plaintiffs' Complaint fails to state
8  a claim for relief.  To survive a motion to dismiss for failure to state a claim under
9  Fed.R.Civ.P. 12(b)(6), the plaintiff must allege facts sufficient "to raise a right to relief above
10 the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167
11 L. Ed. 2d 929 (2007). The "complaint must contain sufficient factual matter, accepted as true,
12 to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937,
13 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570). Compare Wyler
14 Summit Partnership v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998) ("[A]ll
15 well-pleaded allegations of material fact are taken as true and construed in a light most
16 favorable to the nonmoving party.") with Sprewell v. Golden State Warriors, 266 F.3d 979,
17 988 (9th Cir. 2001) ("[T]he court [is not] required to accept as true allegations that are merely
18 conclusory, unwarranted deductions of fact, or unreasonable inferences.").  "Threadbare
19 recitals of the elements of a cause of action, supported by mere conclusory statements, do not
20 suffice." Iqbal, 129 S.Ct. at 1949;  Twombly, 550 U.S. at 555 ("[A] formulaic recitation of
21 the elements of a cause of action will not do."). However, "[a] dismissal for failure to state
22 a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set
23 of facts that would entitle it to relief." Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999).
24 Also, in evaluating a motion to dismiss, a district court need not limit itself to the allegations
25 in the complaint; but may take into account any "facts that are [ ] alleged on the face of the
26 complaint [and] contained in documents attached to the complaint." Knievel v. ESPN, 393
27 F.3d 1068, 1076 (9th Cir. 2005).

28     Defendant argues that Plaintiffs' Complaint fails to state a claim for relief under 42

1   U.S.C. § 1981. "Among other things, § 1981 guarantees 'all persons' the right to 'make and
2   enforce contracts.' This right includes the right to the 'enjoyment of all benefits, privileges,
3   terms, and conditions of the Contractual relationship,' including the relationship between
4   employer and employee. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1122 (9th Cir.
5   2008) (internal citations omitted) (quoting 42 U.S.C. § 1981(a); Id. § 1981(b)).  To state a
6   hostile work environment claim under § 1981, a plaintiff must allege that "(1) he was
7   subjected to verbal or physical conduct because of his race, (2) the conduct was unwelcome,
8   and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his
9   employment and create an abusive work environment." Id.

10       Although § 1981 claims are not subject to heightened pleading requirements, a
11  Complaint still must still allege facts sufficient to give a defendant notice of the grounds on
12  which the claim rests. Williams v. Boeing Co., 517 F.3d 1120, 1130 (9th Cir. 2008) ("Even
13  though heightened pleading is not required in discrimination cases, the complaint must still
14  give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it
15  rests.") Plaintiff's allegations, however, are completely devoid of specific factual allegations
16  pertaining to any individual acts of discrimination or the consequences of that discrimination,
17  other than the obtuse statement "racial discrimination by defendant diminished and destroyed
18  the contractual relationship between plaintiffs and defendant."   And as this Court has
19  previously mentioned, it is not clear from the face of the Complaint whether Plaintiffs allege
20  acts of discrimination subsequent to those addressed in EEOC v. iPayment, or have brought
21  new allegations against Defendant.

22       The Court agrees with Defendant that Plaintiff's Complaint does nothing more than
23  make a threadbare recital § 1981's elements in violation of Twombly. 127 S. Ct. at 1965 ("a
24  formulaic recitation of the elements of a cause of action will not do."). The factual allegations
25  and charging sections of Plaintiff's Complaint are combined into one section and limited to
26  three sentences:  (1) "This is an employment discrimination case by former employees of
27  defendant alleging discriminatory conduct against them because of their race. Plaintiffs
28  allege that they had employment contracts with the defendant"; (2) "Defendant subjected

1 plaintiffs, as employees, to unwelcome racial harassment, including racial comments and
2 slurs by Defendant's managers and/or employees, which fractured plaintiffs' contractual
3 relationship because of race"; and (3) "That discriminatory conduct and racial discrimination
4 by defendant diminished and destroyed the contractual relationship between plaintiffs and
5 defendant, and caused plaintiffs to be discriminated against because of their race." (Doc.
6 1, p.2). Plaintiffs' Complaint is plainly deficient and must be dismissed.

7 Defendant requests that this dismiss with prejudice, arguing amendment would be
8 futile because of the waiver and res judicata issues already addressed by this Court. See
9 Newland v. Dalton, 81 F.3d 904, 907 (9th Cir. 1995) ("While Fed. R. Civ. P. 15(a)
10 encourages leave to amend, district courts need not accommodate futile amendments.").
11 Because, however, the Court has found that neither one of those issues necessitates dismissal,
12 it cannot say that amendment would be futile. To the contrary, the fact that the EEOC was
13 able to negotiate a Consent Decree that included sizeable cash damages for Plaintiffs
14 suggests they Plaintiffs may yet be able to state a claim for relief. The Court, therefore, will
15 grant Defendant's Motion to Dismiss, but with leave to amend within fifteen days of the
16 receipt of this Order.

17 **Accordingly,**

18 **IT IS HEREBY ORDERED** granting Defendant's Motion to Dismiss. (Doc.
19 12).

20 **IT IS FURTHER ORDERED** granting Plaintiffs leave to amend their Complaint.
21 Any amended complaint must be received by this Court within fifteen days of the date of
22 this Order.

23 **IT IS FURTHER ORDERED** denying as moot Plaintiffs' Motion to Extend
24 Time to Respond to Motion to Dismiss, (Doc. 16).
25 / / /
26
27
28

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion to Convert Defendant's Rule 12(b)(6) Motion to Dismiss into a Motion for Summary Judgment. (Doc. 18).

DATED this 29th day of July, 2010.

Mary H. Murguia
United States District Judge