**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Calvin Matthews, Tyrone Hunt, and Michael Buckner,<br><br>Plaintiffs,<br><br>vs.<br><br>NPMG Acquisition Sub, LLC,<br><br>Defendant. | No. CV 09-2326-PHX-MHM<br><br>**ORDER** |

Currently before this Court is Plaintiffs Motion to Vacate Order and Judgment of Dismissal Pursuant to F.R.Civ.P. 59(e) and F.R.Civ.P. 60(b)(1). (Doc. 24). Having carefully considered the Parties' briefing and determined that oral argument is unnecessary, the Court issues the following Order:

**I.  BACKGROUND**

This case was an action for employment discrimination brought pursuant to 42 U.S.C. § 1981. Plaintiffs' Complaint, filed November 4, 2009, alleged that their employer, Defendant NPMG Acquisition Sub, LLC, discriminated against them based on their race. (Doc. 1). The case, however, was not the first case against Defendant in which Plaintiffs have been involved. Plaintiffs were the beneficiaries of a consent decree entered in Equal Employment Opportunity Commission v. iPayment, Inc. and NPMG Acquisition Sub, LLC ("EEOC v. iPayment") (CV-08-01790, Doc. 69). EEOC v. iPayment was an action brought

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., by the Equal Employment Opportunity Commission ("EEOC") to "correct unlawful employment practices on the basis of race and to provide appropriate relief to Calvin Matthews, Tyrone Hunt, Michael Buckner, and a class of employees, who were adversely affected by such practices." (CV-08-01790, Doc. 10, p.1). On September 15, 2009, Judge Bolton entered a consent decree, which ordered payment of $100,000.00 to Calvin Matthews, $90,000.00 to Tyrone Hunt, and $90,000.00 to Michael Buckner as compensatory damages, in addition to a number of other forms of non-monetary relief, such as personalized apology letters. (CV-08-01790, Doc. 67). Additionally, the consent decree stated:

> This Consent Decree resolves all claims of the Commission and of Mssrs. Matthews, Hunt, Buckner, Gawarecki (each a "Charging Party," and collectively the "Charging Parties") and a class of former employees identified in Exhibit B hereto (each a "Class Member," and collectively the "Class Members") against Defendant (including, but not limited to, Defendant's officers, members, directors, and employees), including any and all claims for back pay, compensatory and punitive damages, interest, injunctive relief, and attorney's fees and costs arising out of the issues that were or could have been raised in this lawsuit up until the date of the execution of this Consent Decree by the parties.

(emphasis added) (Id., p.2, ¶1).

On January 6, 2010, Defendant filed a Motion to Dismiss, arguing that Plaintiffs' claim was barred by the doctrine of res judicata or, in the alternative, Plaintiffs' Complaint failed to state a claim for relief. (Doc. 12). On July 30, 2010, this Court granted Defendant's Motion to Dismiss, finding that the Court was without sufficient evidence to determine whether Plaintiffs' claims were res judicata barred, but found that Plaintiffs' Complaint failed to state a claim for relief. (Doc. 21). The Court also granted Plaintiffs' request for leave to amend, giving Plaintiffs 15 days from the date of the Order to file their First Amended Complaint. (Id.). Plaintiffs did not file an amended complaint. Accordingly, on August 24, 2010, the Court ordered the Clerk of the Court to enter judgment, (Doc. 22), and the Clerk entered judgment that same day. (Doc. 23).

On September 21, 2010, a little less than two months after the entry of judgment, Plaintiffs filed the instant Motion to Vacate Order and Judgment of Dismissal Pursuant to

F.R.Civ.P. 59(e) and F.R.Civ.P. 60(b)(1). (Doc. 24). In their motion, Plaintiffs asked for relief based largely on their lawyers assertion that he did not receive the notice of electronic filing ("NEF") sent by the Court's ECF system that notified the Parties of the Court's July 30, 2010 Order granting Defendant's Motion to Dismiss and consequently was not aware of the Court's Order until after the deadline to file an amended complaint had expired. Defendant responded on October 8, 2010. (Doc. 25). In support of its response, Defendant filed the Declaration of Juliet Burgess, in which Burgess stated that District of Arizona court employee Barbara Stevenson informed her that the Court's ECF delivery log indicated the NEF associated with the July 30, 2010 Order was successfully transmitted to Plaintiffs' lawyer and that the Court did not receive a delivery failure notice from Plaintiffs' lawyer's registered email. (Doc. 25, Exh. 1). A week later, on October 15, 2010, Plaintiff lodged an amended version of the Burgess Declaration with the Court. (Doc. 26-1). In her Amended Declaration, Burgess further explained that although the Court had not received a delivery failure notice concerning the July 30 NEF, the "the delivery log indicated that the NEF was 'not received' by the email address registered to Plaintiff's attorney. (Id.).

In light of the filing of the amended declaration, on October 15, 2010, Plaintiffs filed a request for extension of time to file their reply to Defendant's response brief. (Doc. 27). On October 19, 2010, Defendant responded in opposition to Plaintiffs' motion. (Doc. 28). On October 27, 2010, Plaintiffs' filed a supplemental response to Defendant's response to the extension of time motion. (Doc. 29). Two days later, on October 29, 2010, Plaintiffs filed a motion requesting oral argument, an evidentiary hearing, and instructions regarding when they should file their reply. (Doc. 30). On February 7, 2011, the Court filed an Order denying Plaintiffs' request for oral argument and directing Plaintiffs to file a reply no later than close of business on February 15, 2011. (Doc. 32). On February 15, 2011, Plaintiffs filed their reply brief. (Doc. 33).

/ / /

## II. DISCUSSION

Plaintiffs seek relief from the judgment on two grounds; Rules 59 and 60 of the Federal Rules of Civil Procedure. The Court will address each in turn, discussing Rule 59, then moving onto Rule 60.

### A. Rule 59

Rule 59(e) provides that "[a]motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). The Ninth Circuit recognizes four grounds for relief under this rule: "1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law." Turner v. Burlington N. Santa Fe R.R. Co., 338 F.3d 1058, 1063 (9th Cir. 2003) (citations and internal quotation marks omitted). Plaintiff seeks relief pursuant to the first and third grounds.

#### 1. Manifest error of law or fact

The Court turns first to Plaintiffs' claim that the Court's July 30, 2010 Order dismissing their case should be vacated because it commits a manifest error of law. In that Order, the Court found that Plaintiff's Complaint did not contain enough specific facts to state a claim for relief. Plaintiffs do not contest the Court's characterization of its Complaint. Instead, they argue that factual allegations sufficient to state a claim for relief were found in the EEOC Complaint attached to Defendant's motion to dismiss, and that the Court should have considered that document (and the factual allegations therein) as part of its Rule 12(b)(6) analysis. The Court rejects this argument.

The fact that Plaintiffs were party to a similar case previously litigated against these Defendants does not negate Plaintiffs' duty to comply with the rules of civil procedure. Even if Plaintiffs are correct that this Court could have completely incorporated by reference the facts from a complaint in another case (which the Court doubts), doing so would not have been proper in this instance. First, Plaintiffs' Complaint makes no reference to the EEOC litigation or otherwise attempts to incorporate the facts therein. Additionally, even after

- 4 -

1  Defendant challenged the sufficiency of the Complaint, Plaintiffs never once expressly
2  informed the Court that the factual allegations in the EEOC Complaint were identical to the
3  ones in the instant case. To the contrary, Plaintiffs argued that they sought "to recover under
4  42 U.S.C. §1981 in this action, a claim that the EEOC could not and did not bring,"
5  suggesting the possibility of a discrepancy between the allegations in the EEOC complaint
6  and those that underpin the instant Complaint. Indeed, in its July 30 Order, the Court noted
7  the possibility that Plaintiff meant to bring claims based on incidents that occurred either
8  prior to or after the date of the incidents alleged in the EEOC Complaint. At best, Plaintiffs
9  response to the motion to dismiss warranted an assumption that the factual predicate in the
10 instant case is identical to that set forth in the EEOC v. iPayment complaint. The Court,
11 however, is not in the business of guessing which facts a plaintiff did or did not mean to
12 allege. See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,
13 459 U.S. 519, 526 (1983) (noting that in deciding motions to dismiss, courts must not
14 "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have
15 violated the ... laws in ways that have not been alleged."). Accordingly, the Court finds that
16 it did not commit a manifest error of law by dismissing Plaintiffs' Complaint with leave to
17 amend.

## B.     Manifest injustice

19    Plaintiffs next claim that allowing the judgment to remain in place would cause a
20 manifest injustice. Unlike Plaintiffs' manifest error of law argument, this is not an attack on
21 the July 30, 2010 order, but instead on the final judgment entered by the Clerk of the Court
22 on August 24, 2010. Whether entry of that judgment was a manifest injustice is intrinsically
23 tied up with the question of whether Plaintiffs' attorney's failure to timely learn of the
24 Court's July 30, 2010 Order is behavior which can be excused by this Court. This question
25 is the same one posed in Plaintiffs' request for relief under Rule 60, in which Plaintiffs' seek
26 relief from judgment based on the grounds of their attorney's excusable neglect. Because
27 relief under both rules is predicated on the same issue, the Court finds that in this case the

Rule 60 analysis subsumes the question of whether allowing the judgment to stand will work a manifest injustice.

### 2. Rule 60

Rule 60 provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding," when it was caused by "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b). Plaintiffs assert that their failure to file an amended complaint within the fifteen-day period was the product of excusable neglect, namely that Plaintiffs attorney did not receive the NEF informing it of the Court's Order dismissing the case. Excusable neglect "'encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence,' and includes 'omissions caused by carelessness.'" Lemoge v. United States, 587 F.3d 1188, 1196 (9th Cir. 2009) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 394, 388 (1997))(internal citations omitted). Accordingly, courts must avoid applying a "rigid legal rule against late filings attributable to any particular type of negligence." Pincay v. Andrews 389 F.3d 853, 860 (9th Cir. 2004). Instead, a four-factor equitable test is utilized that considers "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1261 (9th Cir. 2010).

Three of the four factors quite clearly favor Plaintiffs. Other than losing the benefit of its quick victory and having to continue litigating, Defendant will not be prejudiced. Id. ("Prejudice requires greater harm than simply that relief would delay resolution of the case."); Bateman v. U.S. Postal Service, 231 F.3d 1220, 1225 (9th Cir. 2000) ("The prejudice to the Postal Service was minimal. It would have lost a quick victory and, should it ultimately have lost the summary judgment motion on the merits, would have had to reschedule the trial date. But such prejudice is insufficient to justify denial of relief under Rule 60(b)(1)."). Additionally, the Court finds that this a case in which the prejudice to the moving party must also be considered, Lemoge, 587 F.3d at 1195 (finding that in certain

1 circumstances it can be error not to also consider the "the prejudice the [moving party] would
2 suffer if they were denied relief"), as denial of Plaintiffs' motion will cause them to suffer
3 extreme prejudice; the inability to prosecute their instant claim. Id. at 1196 (noting that if the
4 court did not grant Rule 60 relief, "the [plaintiffs] would endure the ultimate prejudice of
5 being forever barred from pursuing their claims."). As for the length of the delay, it was
6 approximately two months, a period of time that falls well within Rule 60's one-year statute
7 of limitations. F.R.Civ.P. 60(c)(1)("A motion under Rule 60(b) must be made within a
8 reasonable time — and [when excusable neglect is alleged,] no more than a year after the
9 entry of the judgment or order or the date of the proceeding."). Additionally, Plaintiffs' filed
10 the instant request in a reasonable amount of time, approximately one month after they
11 discovered the missed deadline. See Bateman 231 F.3d at 1225 (finding a reasonable delay
12 where a party "filed his Rule 60(b)(1) motion a little more than one month after the court
13 denied his request to rescind the judgment."). Finally, there is no indication that Plaintiffs'
14 attorney acted in bad faith. To the contrary, the amended Burgess Declaration strongly
15 suggests that Plaintiff's attorney's story concerning the missed email is true, and nothing else
16 in the record suggests his actions were intentional or deceitful. Id. (finding no bad faith
17 where an attorney's "errors resulted from negligence and carelessness, not from deviousness
18 or willfulness.").

19        The reason for the delay, however, very definitely weighs against Plaintiffs. Although
20 Plaintiffs' attorney did not receive the NEF, he was aware of his email system's July 30,
21 2010 failure. Instead of investigating the consequence of such a failure, Plaintiff's attorney
22 merely assumed that missed emails would be received as soon as the email system was back
23 online. This assumption was not only incorrect; it was careless and irresponsible. Plaintiffs'
24 attorney should have contacted the Clerk of the Court for the District of Arizona and ensured
25 that he had not missed any NEFs. See Robinson v. Wix Filtration Corp., LLC, 599 F.3d 403,
26 413 (4th Cir. 2010) (finding that an attorney who was aware he was having email difficulties
27 should have "notified the court and opposing counsel of his computer problems, or found
28 another way to stay informed regarding any developments in the case"); Fox v. American

Airlines, Inc., 389 F.3d 1291, 1295 (D.C. Cir. 2004) ("Regardless whether he received the e-mail notice, [plaintiff's attorney] remained obligated to monitor the court's docket."). This negligent conduct has not only placed his client's interests at peril, but also has caused significant resources of both the Parties and this Court to be unnecessarily expended.

Were the third factor—the reason for the delay— the only pertinent consideration, or even if it was given greater weight than the other three factors[1], the Court would have no difficulty finding that Plaintiffs' attorney's behavior was not excusable neglect. Plaintiff's attorney's decision to assume he would receive any missed emails was the height of carelessness, and the Court is certainly tempted to conclude that any negligent behavior which causes a lawyer to miss a NEF or otherwise miss a deadline of which he should have been aware is per se inexcusable. The Ninth Circuit, however, expressly forbids the use of per se rules, and mere carelessness does not make an act of negligence inexcusable. See, e.g, Bateman, 231 F.3d at 1224 ("After Pioneer, however, we recognized that the term [excusable neglect] covers cases of negligence, carelessness and inadvertent mistake."). Accordingly, "whether neglect is 'excusable' is the conclusion one reaches after considering the pertinent factors, not an independent element with moral content," Pincay, 389 F.3d at 860 (Berzon, J., concurring). "[It] is at bottom an equitable [consideration], taking account of all relevant circumstances surrounding the party's omission." Lemoge, 587 F.3d at 1192.

In this case, four of the five factors considered by the court weigh in favor of granting Plaintiffs' motion. As the Court has already explained, the collateral consequences of unwinding the judgment is de minimis for Defendant, whereas leaving the judgment in place would be profoundly harmful to Plaintiffs. Additionally, there is no indication of bad faith,

---

[1] Some circuits have held that the third factor is considered to be the most significant. United States v. Torres, 372 F.3d 1159, 1163 (10th Cir. 2004); Graphic Comms. Int'l Union v. Quebecor Printing Providence, Inc., 270 F.3d 1,5 (1st Cir. 2001). The Ninth Circuit, however, does not appear to have adopted such an approach. See Pincay,389 F.3d 853 at 861–62 (Kozinsky, J., dissenting) (criticizing the majority for not finding that the third factor is the most important one); id. at 860 (Berzon, J., concurring) ("Pioneer portends a balancing test, and does not ascribe determinative significance to any single factor.").

1  merely careless behavior, and they delay has not been unreasonable.  Also mitigating
2  somewhat in Plaintiffs' favor is that fact that their attorney did not in fact receive the NEF
3  in question. Regardless of any obligation to affirmatively monitor the docket, the Court finds
4  a small qualitative difference in blameworthiness between a lawyer who actually received
5  the NEF and one who did not.  While the Court is not pleased about condoning, let alone
6  rewarding, Plaintiff's attorney's behavior, given the totality of the circumstances it cannot
7  find that the equitable outcome in this case is to let the judgement stand and deprive Plaintiffs
8  of their day in court.

**Accordingly,**

**IT IS HEREBY ORDERED** granting in part and denying in part Plaintiffs' Motion to Vacate Order and Judgment of Dismissal Pursuant to F.R.Civ.P. 59(e) and F.R.Civ.P. 60(b)(1). (Doc. 24).  Plaintiffs' request that the Court's July 30, 2010 Order be vacated is denied.  Pursuant to Rule 60(b)(1), however, the Clerk of the Court's August 24, 2010 Judgment is vacated, and the Clerk of the Court is directed to reopen this case.

**IT IS FURTHER ORDERED** that Plaintiffs must file their First Amended Complaint with this Court no later than the close of business on March 22, 2011.

**IT IS FURTHER ORDERED** that if Plaintiffs fail to file their First Amended Complaint by March 22, 2011, the Clerk of the Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to reassign this case.

DATED this 15th day of March, 2011.

_____
Mary H. Murguia
United States District Judge

- 9 -